BASILIKO ET UX. *v.* WELSH, JR., ET AL., TRUSTEES

[No. 237, September Term, 1959.]

20

*Decided June 14, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, and HORNEY, JJ.

Submitted on brief by *A. Slater Clarke,* for appellants.

*Jerome E. Korpeck,* with whom were *Wheeler & Korpeck* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

This is the second time that this case has been before this

Court. On the first occasion, Constas G. Basiliko *et ux.* (the Basilikos, mortgagors or exceptants) appealed from the refusal of the chancellor to set aside a sale of mortgaged property. That appeal was dismissed. This appeal is from the order ratifying and confirming the report and account of the auditor.

The Basilikos, who were the original owners of the property sold in the foreclosure proceeding, executed a mortgage or deed of trust to T. Hammond Welsh, Jr. and Wilfred M. Dyer, Jr. (the trustees or appellees) and subsequently conveyed the mortgaged property outright to Edward Schweitzer (a second mortgagee and the apparent owner of the equity of redemption, often hereinafter called Schweitzer), who was the owner of record on the day of sale. The mortgagors, who had remained in possession of the mortgaged property until they were dispossessed by the purchasers following the dismissal of the first appeal, claimed then and still claim that they are the equitable owners, that Schweitzer is only a nominal owner and that the property was conveyed to him for a security purpose.

In *Basiliko v. Welsh,* 219 Md. 602, 150 A. 2d 220 (1959), where the mortgagors had either neglected or declined to file a *supersedeas* bond to stay execution of the final order of ratification and the trustees had conveyed the mortgaged property to the purchasers as they had a right to do under the circumstances, we held that the question concerning the ratification of sale had become moot and dismissed the appeal. In the *per curiam* we also stated that if we were to decide the case on the two questions presented by the mortgagors—whether or not they had standing to except to ratification because they were not the record owners and whether or not the trustees had properly conducted the foreclosure sale—the result would not be different.

Sometime after the mandate issued on the first appeal had been returned to the lower court, the auditor stated an account of the gross proceeds of sale, in which, among other things, he distributed the surplus proceeds of sale to "Edward Schweitzer" as the "record owner of property foreclosed on date of sale." Schweitzer was not a party to the proceeding

22

and the record does not disclose that he ever filed a petition to be made a party or a claim for the surplus proceeds. While the first appeal was pending in this Court, the Basilikos filed a separate bill in equity against Schweitzer and his wife as well as Irene R. Fenik (who purported to be the assignee of an alleged third mortgage from Schweitzer and his wife to Sara Somers) and the trustees named in the foreclosed first mortgage, in which bill, among other things, the mortgagors sought to have the second and third mortgages (and trust notes) declared null and void and prayed for an injunction to restrain the trustees-appellees from disposing of the proceeds of the foreclosure sale. Later, when the audit distributing the proceeds of sale was filed showing distribution of the surplus proceeds to Schweitzer, the Basilikos filed exceptions to the audit, in which, among other things, it was stated that they, and not Schweitzer, were entitled to the surplus proceeds, and prayed the court to direct the trustees to retain the "balance of the proceeds" until such time as the questions raised by the separate bill—a copy of which was attached to the exceptions—had been determined. No testimony was taken in connection with the exceptions to the audit; and the chancellor heard only the arguments of the parties to the foreclosure proceeding.

The chancellor, because the Basilikos had not prosecuted the separate bill promptly, because they had not sought a hearing before the auditor on the question of their entitlement to the surplus proceeds, and because the ruling of the former chancellor with respect to the exceptions to the sale had been appealed and dismissed by this Court, concluded that it was then too late for the Basilikos to establish a claim to the fund and that there was no legal or equitable reason why the funds should be retained further by the trustees. The exceptions were thereupon overruled and the audit was finally ratified and confirmed. We think this was error since it is apparent that the Basilikos have not had their day in court on this issue.

The fact that the Basilikos had not proceeded as expeditiously as they might have in the prosecution of the separate bill was not, under the circumstances in this case, a valid rea-

son why the chancellor should not have taken testimony, or have caused such to be taken, bearing on the alleged grounds of the exceptions. Even if the exceptants had not filed a copy of the ill-advised and unnecessary separate bill with their exceptions to the audit, the court had authority on its own motion to consolidate the actions, to require a joint hearing of all the matters in issue, and to make such orders concerning the proceedings as would avoid unnecessary costs and further delay. Maryland Rule 503. Or the chancellor, in his discretion, could have required such amendment of the objections to the audit as would have brought the issue squarely within the usual scope of exceptions to the ratification of an audit. The testimony having been taken, the chancellor, had it been necessary or desirable, could have then remanded the cause to the auditor with special instructions as to how the account should be stated. Alexander, *Chancery Practice,* Ch. VII (Account), § 4, p. 128 (1839). The record indicates the absence of any written order of reference to the auditor, and the proceedings seem to have become rather confused.[1]

In holding on the previous appeal that the question as to the final ratification of the sale was moot, we stated in effect that the mortgagors were without standing to object to the ratification and that the trustees had not acted improperly, but we did not undertake to decide who would be entitled to the proceeds of sale. That question was not before us then and is not before us now. Even though the chancellor indicated that he was of the opinion that the statement in the first *Basiliko* case with respect to the lack of standing to object to the ratification of the mortgage sale might be *res judicata* to the issue here concerning ownership of the surplus proceeds, the question was neither raised below nor here. We think there is no doubt that the Basilikos were not precluded from claiming ownership of the equity of redemption and asserting that the surplus proceeds of sale should be paid to them.

---

1. In this Court counsel for the exceptants failed to appear for argument, explaining that he had forgotten about it and blandly suggesting that the case be set for reargument.

24

Pursuant to Rule 871, the case will be remanded without affirmance or reversal for such further proceedings as shall be in accordance with this opinion and with Rule 871, *supra.* On remand, a definite written order of reference to the auditor, with appropriate provisions for the filing of claims and hearings thereon, would seem desirable.

> *Case remanded without affirmance or reversal for further proceedings in accordance with this opinion; the costs to be paid out of the surplus proceeds of sale.*